1  Perry J. Viscounty (SBN 132143)
   *perry.viscounty@lw.com*
2  Carl Joseph Bacon (SBN 319086)
   *cj.bacon@lw.com*
3  Ryan R. Owen (SBN 344853)
   *ryan.owen@lw.com*
4  LATHAM & WATKINS LLP
   650 Town Center Drive, 20th Floor
5  Costa Mesa, CA 92626-1925
   Telephone: (714) 540-1235
6  Facsimile: (714) 755-8290
7
   *Attorneys for Plaintiff*
8  *Chrome Hearts LLC*

9

**UNITED STATES DISTRICT COURT**

10

**CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  CHROME HEARTS LLC, a Delaware Limited Liability Company, ) | CASE NO.: 2:25-cv-8647 |
| 13                    Plaintiff, ) | **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| 14            vs. ) | **1. TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)** |
| 15  THE OTHER SHOE PRODUCTIONS, INC., a California Corporation; NEIL ) | **2. FALSE DESIGNATION OF ORIGIN AND FALSE** |
| 16  YOUNG, an Individual; JACOB MICAH NELSON, an Individual; ) | **DESCRIPTIONS (15 U.S.C. § 1125(a))** |
| 17  COREY MCCORMICK, an Individual; ANTHONY LOGERFO, an Individual; ) | **3. UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. &** |
| 18  DEWEY "SPOONER" LINDON OLDHAM JR., an Individual; and ) | **PROF. CODE, § 17200, et seq.** |
| 19  DOES 1-10, inclusive, ) | **4. COMMON LAW TRADEMARK INFRINGEMENT** |
| 20                    Defendants. ) | **5. COMMON LAW UNFAIR COMPETITION** |
| 21  ) | **JURY TRIAL DEMANDED** |
| 22  ) | |

23        Plaintiff Chrome Hearts LLC ("Chrome Hearts" or "Plaintiff") for its claims

24  against defendants The Other Shoe Productions, Inc., Neil Young, Jacob Micah

25  Nelson, Corey McCormick, Anthony Logerfo, and Dewey "Spooner" Lindon

26  Oldham Jr., and DOES 1-10 (collectively, "Defendants") alleges as follows:

27

28

# I.    JURISDICTION AND VENUE

1.    Plaintiff files this action against Defendants for trademark infringement and false designation of origin under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), and related claims of trademark infringement and unfair competition under the statutory and common law of the State of California.

2.    This Court has subject matter jurisdiction over Plaintiff's Lanham Act claims under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.    This Court has personal jurisdiction over Defendants because Defendants reside and/or maintain a principal place of business in the State of California and/or conduct continuous and systematic business in this State. Defendants also placed the Accused Products and Accused Services (as defined below) in the stream of commerce directed to residents of the State of California, thereby deriving commercial benefits from the sale of Accused Products and Accused Services and causing injury to Plaintiff within the State of California.

4.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

# II.    THE PARTIES

5.    Plaintiff is a limited liability company organized and existing under the laws of the state of Delaware, with an office and principal place of business at 915 North Mansfield Avenue, Los Angeles, California 90038.

6.    Upon information and belief, The Other Shoe Productions, Inc. is a business entity with its principal place of business at 11620 Wilshire Boulevard, 580,

Los Angeles, California 90025.

7.    Upon information and belief, Neil Young is an individual with a place of residence in Los Angeles County, is an owner, officer, director, and/or managing agent of The Other Shoe Productions Inc., is the founding member of the band *Neil Young and The Chrome Hearts* ("NYTCH" or "The Band"), and has played and plans to play live concerts in California with The Band in which The Band or its sponsors provide the Accused Products and Accused Services (as defined below).

8.    Upon information and belief, Jacob Micah Nelson is an individual with a place of residence in Los Angeles County, is a band member of NYTCH, and has played and plans to play live concerts in California with The Band in which The Band or its sponsors provide the Accused Products and Accused Services (as defined below).

9.    Upon information and belief, Corey McCormick is an individual with a place of residence in Los Angeles County, is a band member of NYTCH, and has played and plans to play live concerts in California with The Band in which The Band or its sponsors provide the Accused Products and Accused Services (as defined below).

10.    Upon information and belief, Anthony LoGerfo is an individual with a place of residence in Ventura County, is a band member of NYTCH, and has played and plans to play live concerts in California with The Band in which The Band or its sponsors provide the Accused Products and Accused Services (as defined below).

11.    Upon information and belief, Dewey "Spooner" Lindon Oldham Jr. is a band member of NYTCH and has played and plans to play live concerts in California with The Band in which The Band or its sponsors provide the Accused Products and Accused Services (as defined below).

12.    Chrome Hearts is unaware of the names and true capacities of Defendants, whether individuals, corporate and/or partnership entities, named herein as DOES 1 through 10, inclusive, and therefore sues them by their fictitious names.

1  Chrome Hearts will seek leave to amend this complaint when their true names and
2  capacities are ascertained.  Upon information and belief, each one of Defendants
3  caused or are in some manner responsible for causing the wrongful acts alleged
4  herein, and that at all relevant times each one was the agent, servant, and/or
5  employee of the other Defendants acting within the course and scope of said agency,
6  service, and employment.

7  13.  Upon information and belief, at all relevant times herein, each one of
8  Defendants knew or reasonably should have known of the wrongful acts and
9  behavior alleged herein and the damages caused thereby, ratified and encouraged
10 such acts and behavior, and/or had a non-delegable duty to prevent such acts and
11 behavior but failed or refused to do so.

12 **III.  ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

13 **A.  Plaintiff and Its Successful CHROME HEARTS® Brand**

14 14.  Chrome Hearts is an American luxury brand that has been designing,
15 manufacturing, and selling artistically styled leather goods, apparel, jewelry, and
16 accessories since 1988.

17 15.  Chrome Hearts sells a wide variety of quality artistic products,
18 including pants, jackets, vests, jewelry, including necklaces, bracelets, rings and
19 wallet chains, belt buckles, fabric apparel, and a wide collection of other products,
20 including furniture, eyewear, and crystal ware.

21 16.  As shown below, Chrome Hearts also sells numerous other Chrome
22 Hearts® branded apparel and accessories, including T-Shirts, sweatshirts, hoodies,
23 jeans, undergarments, handbags, socks, scarves, fragrances, and a host of other
24 consumer goods.

25
26
27
28

COMPLAINT
DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






COMPLAINT
DEMAND FOR JURY TRIAL

 

17.    Chrome Hearts® branded products are sold in the exclusive Chrome Hearts® stores throughout the world, on its official website www.chromehearts.com, and in select specialty stores, such as Selfridges in London and the United Arrows and Dover Street Market Ginza boutiques in Japan.

18.    Chrome Hearts is known for combining the look of rugged apparel with fashion attire to make high-quality fashion apparel and accessories.

19.    Almost all Chrome Hearts® products, including clothing, denim, and jewelry, are handmade in Los Angeles by Chrome Hearts' craftsmen.  The level of expert workmanship exercised by these individuals is superior, meticulous, extremely detailed, and conforms with the strict standards established by Chrome Hearts.

20.    Given the renowned quality of Chrome Hearts' products and its massive investment of time, energy, and money to promote its products and services, the Chrome Hearts® brand has become iconic, especially in the fashion and music industries.  And that was the intention.  From the very beginning, the company placed special emphasis on promoting the Chrome Hearts® brand among and with the help of musicians.

COMPLAINT
DEMAND FOR JURY TRIAL

21.    Indeed, many of the world's best-known musicians and other celebrities have used and promoted Chrome Hearts® products, and Chrome Hearts has done numerous celebrated collaborations with famous musicians and other celebrities. This includes musicians like Madonna, Rihanna, Lou Reed, and Cher, as well as high-profile entertainers, such as Arnold Schwarzenegger, Kate Hudson, LeBron James, and Caleb Williams.

22.    Moreover, Chrome Hearts® products are often worn by celebrities to music-related events.  For example, world-famous actor Timothée Chalamet wore a full leather black suit designed by Chrome Hearts to the 2025 Screen Actors Guild award in promotion of his film "A Complete Unknown," in which he portrayed musician Bob Dylan.[1]  The same is true for Paris Hilton—musician, actor, and socialite—who was adorned in a Chrome Hearts dress at the 2025 Grammy Awards.[2] Billie Eilish similarly wore Chrome Hearts apparel to the 2024 Grammy Awards.[3]

23.    Chrome Hearts has also hosted and promoted numerous live music shows under the Chrome Hearts® brand at its factory and stores across the world.

24.    In addition to products sold solely under the Chrome Hearts® brand, Chrome Hearts has also expanded the value, goodwill, and scope of its trademarked brand through exciting collaborations, strategic licensing partnerships, and other authorized co-branding arrangements with other well-known brands and musicians, including The Rolling Stones, 2NE1, Drake, Rick Owens, Off-White and Virgil Abloh, and Bella Hadid.

25.    Chrome Hearts® products have been praised and recognized in numerous articles appearing in both trade publications and publications directed to

---

[1] https://wwd.com/pop-culture/celebrity-news/timothee-chalamet-chrome-hearts-suit-sag-awards-1236971544/ (last visited Sept. 11, 2025).

[2] https://wwd.com/pop-culture/celebrity-news/paris-hilton-gold-sheer-dress-grammys-1236900132/ (last visited Sept. 11, 2025).

[3] https://www.harpersbazaar.com/celebrity/latest/a46574018/billie-eilish-red-carpet-photos-grammys-2024/ (last visited Sept. 11, 2025).

COMPLAINT
DEMAND FOR JURY TRIAL

the general public around the world, including articles in the United States, Germany, Japan, and France. These articles have acclaimed the high artistry, fashion and style of Chrome Hearts' designs and the uniqueness of the designs. For example, in 1993, the Council of Fashion Designers of America ("CFDA") presented Chrome Hearts with an unsolicited award as designer of the year for its innovative accessories and jewelry designs. In 1999, Chrome Hearts was featured in the "Rock Style" exhibit at the Costume Institute of the Metropolitan Museum of Art. In 2022, the CFDA awarded Chrome Hearts the Geoffrey Beene Lifetime Achievement Award—an award that recognizes outstanding designers and their contributions made to American fashion.

26. Chrome Hearts has always devoted substantial time, effort, and money to designing, developing, advertising, promoting, and marketing its products, and spends millions of dollars per year on advertising, promoting, and marketing the Chrome Hearts® brand. As a result of its efforts, Chrome Hearts has sold over a billion dollars worth of products, all bearing one or more of the Chrome Hearts® marks.

27. The constant media attention and fan recognition surrounding the Chrome Hearts® brand, its 2.3 million-plus followers on Instagram, and its sales worldwide all confirm that the Chrome Hearts' mark has become nationally and internationally recognized by the consuming public as identifying Plaintiff as the source of high-quality goods rendered under the Chrome Hearts® mark.

**B. Chrome Hearts' Intellectual Property Rights**

28. Chrome Hearts is the owner of the CHROME HEARTS® word mark, and composite trademarks comprising the CHROME HEARTS mark and design components, including in relevant part the following U.S. federal trademark registrations (collectively, the "Chrome Hearts Marks"):

COMPLAINT
DEMAND FOR JURY TRIAL

| Chrome Hearts' Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| **CHROME HEARTS** | 1,665,791 | 11/26/1991 | 014: jewelry, belt buckles made of precious metal, key rings made of precious metal, cufflinks, tie fasteners made of precious metal, brooches, necklaces and earrings<br>018: garment bags for travel, tote bags, shoulder bags, purses and luggage<br>025: clothing; namely, shirts, trousers, jackets, vests, chaps, men's and women's underwear, coats, clothing belts, gloves and boots<br>026: belt buckles not of precious metal and tie fasteners not of precious metal |
| | 2,192,539 | 9/29/1998 | 042: retail store services in the field of general merchandise |
| | 4,415,950 | 10/8/2013 | 041: Entertainment services in the nature of live performances by a musical band; entertainment services in the nature |

| Chrome Hearts' Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | | | of visual and audio performances by a musical band |
| CHROME HEARTS | 5,918,250 | 11/26/2019 | 021: Basins in the nature of bowls and receptacles, baskets for household purposes; birdcages; boot jacks; bottle openers; bowls; boxes for dispensing paper towels for household use; bread baskets for household purposes, bread boards, bread bins; buckets made of woven fabrics; cake molds; non-electric candelabra, candlesticks, candle extinguishers, candle jars, candle holders; candy boxes; ceramics for household purposes being ceramic mugs, plates, pots, pans, beverageware, works of art, and figurines; chopsticks; closures being lids for pots; clothes pin and pegs; coasters, not of paper or textile; coin banks; cookery molds, cooking pot |

| Chrome Hearts' Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | | | sets, cooking pots, non-electric cooking utensils being spatulas, serving spoons, ladles, and forks, stirrers, and kitchen tongs; electric and non-electric corkscrews; crystal beverage glassware, cups, drinking vessels, drinking glasses; cutting boards for the kitchen; decanters; dishes; dustbins, garbage cans, trash cans, refuse bins; fly swatters; frying pans; glass jars; glasses, unworked and semi-worked except for building glass; gloves for household purposes; kitchen utensils being spatulas, serving spoons, ladles, and forks, stirrers, and kitchen tongs, knife rests for the table, lazy susans; mouse traps; napkin rings; artificial nest eggs; nozzles for watering hose; oven mits, |

| Chrome Hearts' Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | | | kitchen mits, barbecue mits; perfume burners and incense holders being incense burners, perfume sprayers and perfume vaporizers sold empty; piggy banks; place mat not of paper or textile; plungers for clearing blocked drains; polishing cloths; pot lids, potholders; pots; pouring spouts for household use; rat traps; rolling pins; spatulas for kitchen use; stew pans; table napkin holders, tablemats not of paper or textile; toilet utensils being toilet brushes, sponges, and plungers; toothpick holders, toothpicks; towel rails and rings; trays for household purposes; urns; vases; waste paper basket; Bottle stoppers specially adapted for use with wine bottles |

COMPLAINT
DEMAND FOR JURY TRIAL

| Chrome Hearts' Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | 5,186,676 | 4/18/2017 | 021: Incense holders in the nature of incense burners |
| �֎ CHROME HEARTS ✖ | 4,501,511 | 3/25/2014 | 035: Retail store services in the fields of general merchandise, namely, clothing, jewelry, handbags, eyewear, toys, furniture and household products |
| | 4,510,061 | 4/8/2014 | 014: Jewelry, namely, earrings, rings, bracelets, cuff bracelets, necklaces, pendants, brooches, cuff links, tie fasteners and watch bracelets, key rings of precious metals |
| CHROME HEARTS | 2,118,026 | 12/2/1997 | 018: leather bags, namely, handbags, back packs, tote bags, shoulder bags, wallets and luggage 025: men's and women's clothing, namely, pants, shirts, tee shirts, sweaters, jackets, vests, chaps, skirts, belts, underwear, gloves, shoes and boots |
| | 2,216,570 | 1/5/1999 | 014: Jewelry made |

| Chrome Hearts' Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | | | wholly or in part of precious metal; namely, rings, earrings, necklaces, bracelets, cuff links, key rings, belt buckles, watches and tie fasteners |
| | 2,350,742 | 5/16/2000 | 009: Eyewear; namely, eyeglasses, sunglasses and their cases |
| | 2,577,319 | 6/11/2002 | 026: Hair accessories; namely, hair clips, hair bows, hair bands, hair pins, barettes, and ponytail holders |
| | 3,061,598 | 2/28/2006 | 035: Retail store services in the field of general merchandise |
| | 4,658,582 | 12/23/2014 | 009: Phone accessories, namely, phone straps, pouches specially adapted for holding phones, phone cases, charms for phones, tablet cases and laptop cases |

| Chrome Hearts' Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
|  | 2,216,575 | 1/5/1999 | 025: Clothing; namely, tee shirts, shirts, tank tops, pants, chaps jeans, sweaters and jackets |
| | 2,307,126 | 1/11/2000 | 014: Jewelry made wholly or in part of precious metal, namely, rings, earrings, necklaces, bracelets, cuff links, key rings, belt buckles, watches and tie fasteners |
|  | 2,375,507 | 8/8/2000 | 018: Bags; namely, handbags, shoulder bags, back packs, tote bags, wallets and luggage |
| | 2,408,082 | 11/28/2000 | 025: Men's and women's clothing; namely, jeans, leather pants, skirts, jackets, chaps, sweaters, vests, tee-shirts and shirts |
| | 2,538,565 | 2/12/2002 | 009: Eyewear; namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases |
| | 4,504,948 | 4/1/2014 | 014: Jewelry, namely, rings, earrings, necklaces, |

| Chrome Hearts' Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | 4,648,016 | 12/2/2014 | bracelets, cuff bracelets, pendants, brooches, cuff links, tie fasteners, key rings made of precious metals and watch bracelets<br><br>009: Phone accessories, namely, phone straps, pouches specially adapted for holding phones, phone cases, charms for phones, tablet cases and laptop cases |

29.     The Chrome Hearts Marks are incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as Chrome Hearts' entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

30.     Further, the Chrome Hearts Marks constitute prima facie evidence that the Chrome Hearts Marks are valid, and that Chrome Hearts is entitled to the exclusive use of the Chrome Hearts Marks in commerce throughout the United States on the goods and services listed in the registrations.

31.     Chrome Hearts has been and is now engaged in the business of developing, creating, distributing, marketing, advertising, and selling a broad range of clothing items, accessories, and other services, like hosting musical shows, under the Chrome Hearts Marks.

32.     Through careful cultivation of its goods and services provided under the Chrome Hearts Marks, Chrome Hearts has developed an outstanding reputation

as a provider of high quality clothing items, accessories, and other services. Chrome Hearts has also become a household name in the fashion and music industries and has developed an extremely loyal customer following.

33.     Through Chrome Hearts' widespread and continuous use of its family of Chrome Hearts Marks, these marks have acquired extensive goodwill, developed a high degree of distinctiveness, and become widely-known and recognized as identifying goods and services that originate from Chrome Hearts.

**C.     Defendants' Infringing Conduct**

34.     Defendant Neil Young is a famous singer-songwriter, guitarist, and musician known for his contributions to folk, rock, country, and grunge music.

35.     Upon information and belief, Mr. Young has performed and produced music for years as both a solo artist and with a variety of bands.

36.     Upon information and belief, Mr. Young's most recent musical endeavor involved forming a new backing band, collectively called "Neil Young and the Chrome Hearts." NYTCH is comprised of Defendants Mr. Young, Mr. Nelson, Mr. McCormick, Mr. Logerfo, and Mr. Oldham.

37.     Upon information and belief, NYTCH began touring in late 2024, performing at least twice at The Capitol Theatre in Port Chester, New York. Mr. Young and the Band labeled that tour the "2024 Chrome Hearts Tour,"[4] as depicted below:



---

[4] *See* https://neilyoungarchives.com/timeline-basic?position=97.18244954537363 (last visited Sept. 11, 2025).

COMPLAINT
DEMAND FOR JURY TRIAL

38.    In connection with its "Chrome Hearts Tour" performances, NYTCH has marketed, sold, and/or otherwise distributed merchandise bearing the Chrome Heart Marks, as shown below:



39.    Upon information and belief, after or contemporaneous with these initial performances, NYTCH began recording new music, releasing its first single record in January 2025 and a full studio album, titled "Talkin to the Trees," in June 2025. NYTCH's new music has been met with critical acclaim and positive fanfare, with Rolling Stone summarizing Mr. Young as "a man who remains miraculously undiminished as a live performer" and MOJO describing the new album as "a port

1    in the storm in these troubled times."[5]

2        40.    Upon information and belief, "Talkin to the Trees" was produced and

3    released by Defendant The Other Shoe Productions, Inc., which is a record label and

4    production company founded by Mr. Young.

5        41.    Upon information and belief, NYTCH announced a 2025 worldwide

6    tour with numerous performances in the United States, including in Chicago, New

7    York City, and Mountain View and Los Angeles, California, and stops in foreign

8    cities, such as Dublin, Berlin, and London.  Defendants' musical performances and

9    album are collectively referred to herein as the "Accused Services."

10       42.    Upon information and belief, Defendants began manufacturing,

11   producing, marketing, distributing, advertising, selling, and/or offering for sale,

12   clothing, apparel, and other products and services that bear the name Neil Young

13   and the Chrome Hearts ("Accused Products"), which incorporates the exact

14   CHROME HEARTS® word mark and is thus likely to cause confusion with Chrome

15   Hearts' various Chrome Hearts Marks.  Several exemplars depicting the sale of such

16   products at NYTCH's recent performances are shown below:

17

18

19

20

21

22

23

24

25

26

27   _____
     [5] *See* https://www.rollingstone.com/music/music-album-reviews/neil-young-and-the-chrome-hearts-talkin-to-the-
     trees-1235364458/ (last visited Sept. 11, 2025); https://www.mojo4music.com/articles/new-music/neil-young-and-
28   the-chrome-hearts-talkin-to-the-trees-reviewed-veteran-rocker-rages-against-the-world/.

COMPLAINT
DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







COMPLAINT
DEMAND FOR JURY TRIAL

43.    The likelihood of confusion is not merely hypothetical.  Some clothing and apparel vendors have apparently already mistakenly assumed that there is a connection between NYTCH and Chrome Hearts, and are actively promoting that purported connection.  For example, some vendors have started marketing t-shirts that prominently display Mr. Young's name along with Chrome Hearts's iconic stylization of the CHROME HEARTS® mark.  Such promotions tout, among other things, the "rock and roll" appeal of Chrome Hearts, noting "you know, when I first heard about this shirt, it was like, a moment.  Because *it's Neil Young*, right?  The voice of a generation, the guy who makes you feel stuff, man. ***And Chrome Hearts***? That's serious style.  It's that edgy, that rebellious, luxury.  But then, ***you think about the two together and it just hits you, and the clash of aesthetics really makes sense***."[6]  And this has same type of confusion has occurred happened among multiple apparel vendors, as illustrated below:[7]




[6] https://wildfoxtee.com/product/neil-young-and-the-chrome-hearts-shirt/?srsltid=AfmBOoomsukHEHzpVukh0u5O89Rfri79cpgfc022mszh2P0vs1LUHy3i (emphasis added) (last visited Sept. 11, 2025); *see also* https://nowbestshirt.com/product/neil-young-and-the-chrome-hearts-shirt/ (last visited Sept. 11, 2025) (similar).

[7] *See also, e.g.*, https://www.spoofytees.co.uk/products/neil-young-and-the-chrome-hearts-t-shirt?srsltid=AfmBOorrO90kXQquxaSLhL2aHQ6ZY1vA1LJtHTuzYARYoY0U9MH_kk8s (last visited Sept. 11, 2025).

(Source: *https://wildfoxtee.com/product/neil-young-and-the-chrome-hearts-shirt/?srsltid=AfmBOoomsukHEHzpVukh0u5O89Rfri79cpgfc022mszh2P0vs1LUH y3i%20(emphasis%20added)%20* (last visited Sept. 11, 2025)).

44.    And these are merely representative examples.  At minimum, they highlight the types of confusion that Defendants' use of the NYTCH name has already caused and will continue to cause.

45.    On July 21, 2025, Chrome Hearts sent Mr. Young's representatives a letter notifying Mr. Young of Chrome Hearts' trademark rights and respectfully requesting that Mr. Young and NYTCH refrain from any further use of the Chrome Hearts Marks.  Despite NYTCH's undisputed notice of the Chrome Hearts' Marks and the parties' overlapping goods and services—including but not limited to live musical performances and apparel—NYTCH continues to tour under the NYTCH name, including an upcoming show in Los Angeles, where Chrome Hearts is based.

46.    In addition to performing live shows and selling the Accused Products at such shows, Defendants are engaged in the promotion, marketing, advertising, offer for sale, and sale of clothing, apparel, and its music and performances, including the Accused Products and Accused Services, through Mr. Young's website (*neilyoungarchives.com*), where visitors are able to listen NYTCH's "Talking to the Trees" album[8] and view dates of the band's upcoming performances and click a link to Ticketmaster to purchase tickets to its shows.[9]  Defendants are also offering the Accused Products and Accused Services through music applications, like Apple Music[10] and Spotify.[11]  NYTCH's music is also available for sale on the Warner

---

[8] *See* https://neilyoungarchives.com/album?id=A_164 (last visited Sept. 11, 2025).

[9] *See* https://neilyoungarchives.com/account?screen=tickets (last visited Sept. 11, 2025); *see also* https://www.ticketmaster.com/event/0B00624DB75E2333 (last visited Sept. 11, 2025).

[10] https://music.apple.com/us/artist/neil-young-and-the-chrome-hearts/1790393629 (last visited Sept. 11, 2025).

[11] https://open.spotify.com/artist/35S7T09aV4E9CC0R2RgTXK (last visited Sept. 11, 2025).

COMPLAINT
DEMAND FOR JURY TRIAL

Records' website—the distributor of NYTCH's album.[12]  All of these platforms are accessible to consumers throughout the United States, including those within this judicial district.

47.    Upon information and belief, through the aforementioned online portals and websites, and related advertising, Defendants directly target consumers with the Accused Products and Accused Services, including those within this judicial district.

48.    Upon information and belief, Defendants manufactured, distributed, offered for sale, sold, and shipped the Accused Products and Accused Services to consumers in this judicial district.

49.    Upon information and belief, Defendants have engaged and continue to engage in the above infringing activities with the knowledge of the Chrome Hearts Marks and that Plaintiff was a company with its principal place of business located in this judicial district.

50.    Upon information and belief, the Accused Products and Accused Services that Defendants have sold and shipped to this district are very likely cause confusion for consumers in this district, including Plaintiff's customers, who, at the time of initial interest, sale, and in the post-sale setting are led to believe that the Accused Products and Accused Services are genuine goods originating from, associated with, and/or approved by Chrome Hearts.

51.    Chrome Hearts has not granted a license or given Defendants any form of permission to use intellectual property belonging to Chrome Hearts, including the Chrome Hearts Marks, in any way.

52.    Upon information and belief, Defendants have copied Chrome Hearts' federally registered trademarks in an effort to exploit Chrome Hearts' reputation in

---

[12] *See* https://neilyoung.warnerrecords.com/ (last visited Sept. 11, 2025); https://neilyoung.warnerrecords.com/en/neil-young/talkin-to-the-trees-limited-edition-lp/093624829881.html (last visited Sept. 11, 2025); https://neilyoung.warnerrecords.com/en/neil-young/new-arrivals/talkin-to-the-trees-lp/093624829874.html (last visited Sept. 11, 2025); https://neilyoung.warnerrecords.com/en/neil-young/new-arrivals/talkin-to-the-trees-cd/093624829867.html (last visited Sept. 11, 2025).

COMPLAINT
DEMAND FOR JURY TRIAL

1  the market.

2      53.    Upon information and belief, Defendants' unlawful acts were and are

3  intended to confuse consumers and other stakeholders into mistakenly believing that

4  the Accused Products and Accused Services originate with or are otherwise

5  approved, sponsored, or endorsed by Chrome Hearts.

6      **D.    Plaintiff is Harmed by Defendants' Continuing Infringement and**

7          **Unlawful Conduct**

8      54.    Defendants' continued use of the confusingly similar NYTCH name in

9  commerce violates Chrome Hearts' valuable intellectual property rights in the

10  Chrome Hearts Marks, and Defendants' knowing, intentional, willful, and malicious

11  use of the NYTCH name is damaging to Chrome Hearts and Chrome Hearts'

12  intellectual property.

13      55.    Defendants have used the NYTCH name to unfairly usurp and

14  capitalize on the value and goodwill of the Chrome Hearts Marks.  Defendants are

15  aware of Chrome Hearts' strong trademark rights and reputation in the marketplace,

16  but nevertheless use the NYTCH name to profit from the goodwill associated with

17  the Chrome Hearts Marks.

18      56.    Defendants have intentionally and knowingly capitalized off of

19  confusion between the Chrome Hearts Marks, and the NYTCH name, including by

20  providing goods and services that are nearly identical to the goods and services

21  offered by Chrome Hearts.

22      57.    Due to Defendants' willful infringement and unlawful conduct,

23  Chrome Hearts is now forced to bring this Complaint to protect its valuable and

24  longstanding intellectual property rights.  Chrome Hearts had to retain counsel and

25  incur substantial fees and costs (and it continues to incur those fees and costs) to

26  prosecute this suit and pursue its claims.

27      58.    Chrome Hearts' interest in protecting its intellectual property rights and

28  its products and services from consumer confusion outweigh any harm to

1   Defendants. The public interest is best served by granting Chrome Hearts' requested
2   relief against Defendants.

3                           **FIRST CAUSE OF ACTION**

4       **(Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114)**

5       59.    Plaintiff incorporates by reference the paragraphs above as though fully
6   set forth herein.

7       60.    Chrome Hearts owns the Chrome Hearts Marks.  The trademarks
8   reflected in the Chrome Hearts Marks are strong and distinctive and designate
9   Chrome Hearts as the source of all products and services advertised, marketed, sold,
10  or used in connection with the Chrome Hearts Marks.

11      61.    Chrome Hearts is the senior user of the Chrome Hearts Marks as it
12  began use of those marks in interstate commerce decades prior to Defendants' first
13  use of the confusingly similar NYTCH name.

14      62.    Defendants do not have authorization, license, or permission from
15  Chrome Hearts to market and sell their goods and services under the NYTCH name,
16  which is confusingly similar to the Chrome Hearts Marks, and which is used by
17  Defendants with goods and services that are identical and/or closely related to the
18  particular goods and services associated with the Chrome Hearts Marks.

19      63.    Defendants were and are aware of the Chrome Hearts Marks, as they
20  were on constructive notice based on Chrome Hearts' longstanding federal
21  registrations, as well as on actual notice based on, at least, communications between
22  Chrome Hearts and Defendants regarding this matter.  Thus, Defendants'
23  unauthorized use of the NYTCH name was and is knowing, intentional, and willful.

24      64.    As a direct and proximate result of Defendants' wrongful conduct,
25  Chrome Hearts has been and will continue to be damaged.

26      65.    Defendants' actions therefore constitute trademark infringement.

27      66.    Unless an injunction is issued enjoining any continuing or future use of
28  the confusingly similar NYTCH name by Defendants, such continuing or future use

COMPLAINT
DEMAND FOR JURY TRIAL

1    is likely to continue to cause confusion, mistake, or deception as to source, origin,
2    affiliation, or sponsorship of the Accused Products and Accused Services, and will
3    thereby irreparably harm Chrome Hearts.

4         67.    Defendants' activities have caused and will continue to cause
5    irreparable harm to Chrome Hearts, for which it has no adequate remedy at law,
6    because: (i) the Chrome Hearts Marks comprise unique and valuable property rights
7    that have no readily determinable market value; (ii) Defendants' infringement
8    constitutes interference with Chrome Hearts' goodwill and customer relationships
9    and is harming and will continue to substantially harm Chrome Hearts' reputation
10    as a source of high-quality goods and services; and (iii) Defendants' wrongful
11    conduct, and the damages resulting to Chrome Hearts, are continuing.  Accordingly,
12    Chrome Hearts is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

13    **SECOND CAUSE OF ACTION**

14    **(False Designation of Origin and False Descriptions – 15 U.S.C. § 1125(a))**

15         68.    Chrome Hearts incorporates herein by reference the averments of the
16    paragraphs above as though fully set forth herein.

17         69.    The Chrome Hearts Marks are strong and distinctive and designate
18    Chrome Hearts as the source of all goods and services advertised, marketed, sold, or
19    used in connection with those marks.  In addition, by virtue of Chrome Hearts' long-
20    term of use of the Chrome Hearts Marks in connection with its products and services,
21    and its extensive marketing, advertising, promotion, and sale of its products and
22    services under the Chrome Hearts Marks, the Chrome Hearts Marks have acquired
23    secondary meaning, whereby the consuming public of this district, the State of
24    California, and the United States associate the Chrome Hearts Marks with a single
25    source of products and services.

26         70.    Chrome Hearts is the senior user of the Chrome Hearts Marks as it
27    began use of those marks in interstate commerce decades prior to Defendants' first
28    use of the confusingly similar NYTCH name.

COMPLAINT
DEMAND FOR JURY TRIAL

71.     Defendants were and are aware of the Chrome Hearts Marks, as they were on constructive notice based on Chrome Hearts' longstanding federal registrations, as well as on actual notice based on, at least, communications between Chrome Hearts and Defendants regarding this matter.   Thus, Defendants' unauthorized use of the NYTCH name was and is knowing, intentional, and willful.

72.     Through their use of the confusingly similar NYTCH name, Defendants intended to confuse and mislead consumers into believing, and misrepresented and created the false impression, that Chrome Hearts somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar NYTCH name.

73.     In fact, there is no connection, association, or licensing relationship between Chrome Hearts and Defendants, nor has Chrome Hearts ever authorized, licensed, or given permission to Defendants to use the confusingly similar NYTCH name in any manner.

74.     Defendants' use of the confusingly similar NYTCH name will likely cause confusion as to the origin and authenticity of Defendants' website and the related goods and services promoted and sold through its channels of trade. Moreover, Defendants' use of the NYTCH name will likely cause others to believe that there is a relationship between Defendants and Chrome Hearts when, in fact, there is not.

75.     As a direct and proximate result of Defendants' wrongful conduct, Chrome Hearts has been and will continue to be damaged.

76.     Defendants' actions thus constitute false designation of origin and unfair competition.

77.     Defendants' activities have caused, and will continue to cause, irreparable harm to Chrome Hearts, for which it has no adequate remedy at law, in that: (i) the Chrome Hearts Marks comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes

interference with Chrome Hearts' goodwill and customer relationships and will substantially harm Chrome Hearts' reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to Chrome Hearts, are continuing. Accordingly, Chrome Hearts is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

78.    Pursuant to 15 U.S.C. §1117(a), Chrome Hearts is entitled to an order: (i) requiring Defendants to account to Chrome Hearts for any and all profits derived from its actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by Chrome Hearts that were caused by Defendants' conduct.

79.    Defendants' conduct was and is intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), Chrome Hearts is therefore entitled to an award of treble damages against Defendants.

80.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus, Chrome Hearts is entitled to an award of attorneys' fees and costs.

## THIRD CAUSE OF ACTION

**(Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 et seq.)**

81.    Plaintiff incorporates herein by reference the averments of the paragraphs above as though fully set forth herein.

82.    The Chrome Hearts Marks are strong and distinctive marks that have been in use for many years and have achieved enormous and widespread public recognition.

83.    Through prominent, long, and continuous use in commerce, the Chrome Hearts Marks have become and continue to be well-known and distinctive in the State of California.

84.    Defendants' misappropriation of the Chrome Hearts Marks was intended to capitalize on Chrome Hearts' goodwill for Defendant's own pecuniary gain.

85.     Defendants' unauthorized use of the Chrome Hearts Marks dilutes the distinctive quality of the Chrome Hearts Marks and decreases the capacity of such marks to identify and distinguish Chrome Hearts' products and has caused a likelihood of harm to Chrome Hearts' business reputation.

86.     By the acts described above, Defendants have caused and will continue to cause irreparable injury to Chrome Hearts' goodwill and business reputation, in violation of Cal. Bus. & Prof. Code § 17200 et seq.

87.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

88.     Defendants are liable to Chrome Hearts for all damages, whether direct or indirect, for the misappropriation of Chrome Hearts' trademarks, reputation and goodwill, which damages are subject to trebling.

89.     Upon information and belief, Defendants will continue their infringing acts unless restrained by this Court.

90.     Defendants' acts have damaged and will continue to damage Chrome Hearts, and Chrome Hearts has no adequate remedy at law.

91.     In light of the foregoing, Chrome Hearts is entitled to all available relief provided for in California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, et. seq. including permanent injunctive relief, restitution, and attorneys' fees and costs.

## **FOURTH CAUSE OF ACTION**

### **(Common Law Trademark Infringement)**

92.     Chrome Hearts incorporates herein by reference the averments of the paragraphs above as though fully set forth herein.

93.     Chrome Hearts has valid and protectable common law rights in the Chrome Hearts Marks.

94.     Chrome Hearts is the senior user of the Chrome Hearts Marks.

95.     Defendants' conduct constitutes infringement of Chrome Hearts'

1    common law rights in the Chrome Hearts Marks.

2        96.    Defendants' use of the confusingly similar NYTCH name on

3    unauthorized goods and services is likely to cause confusion as to the origin of

4    Defendants' goods and services and is likely to cause others to believe that there is

5    a relationship between Defendants and Chrome Hearts, when there is not.

6        97.    Defendants' wrongful acts have permitted and will permit them to

7    receive substantial profits based on the strength of Chrome Hearts' reputation and

8    the substantial goodwill it has built up in the Chrome Hearts Marks.

9        98.    As a direct and proximate result of Defendants' wrongful conduct,

10   Chrome Hearts has been and will continue to be damaged.

11       99.    Unless an injunction is issued enjoining any continuing or future use of

12   the Chrome Hearts Marks by Defendants, such continuing or future use is likely to

13   continue to cause confusion and thereby irreparably damage Chrome Hearts.

14   Chrome Hearts has no adequate remedy at law.   Accordingly, Chrome Hearts is

15   entitled to an injunction.

16                    **<u>FIFTH CAUSE OF ACTION</u>**

17                    (**Common Law Unfair Competition**)

18       100.   Chrome Hearts incorporates herein by reference the averments of the

19   paragraphs above as though fully set forth herein.

20       101.   Chrome has expended significant time and expense in developing the

21   Chrome Hearts Marks and the high-quality products and services it markets and sells

22   under those marks.  The Chrome Hearts Marks have been very successful and have

23   developed a substantial reputation and goodwill in the marketplace.

24       102.   Through their wrongful conduct, Defendants have misappropriated

25   Chrome Hearts' efforts and are exploiting the Chrome Hearts Marks and Chrome

26   Hearts' reputation to market and sell their services under the Chrome Hearts Marks.

27   These actions constitute unfair competition.

28       103.   As a direct and proximate result of Defendants' wrongful conduct,

Chrome Hearts has been and will continue to be damaged.

104. Unless an injunction is issued enjoining Defendants' unfairly competitive conduct, Chrome Hearts will continue to be damaged irreparably. Chrome Hearts has no adequate remedy at law. Accordingly, Chrome Hearts is entitled to an injunction.

105. Defendants have acted willfully, intentionally, and maliciously, such that Chrome Hearts is entitled to punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment in its favor and against Defendants as follows:

1. Entry of an ORDER granting temporary, preliminary and permanent injunctive relief restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them from:

a) all use of the NYTCH name, the Chrome Hearts Marks, or any other mark likely to cause confusion with the Chrome Hearts Marks (including any misspelling or variation of those Marks) in, on, or with any products or services, or in connection with the advertising, marketing, or other promotion, distribution, offering for sale, or sale, of any products or services;

b) manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling the Accused Products and Accused Services and/or any other products or services that bear marks/designs identical to, substantially indistinguishable from, and/or confusingly similar to the Chrome Hearts Marks;

c) engaging in any other activity constituting unfair competition with Chrome Hearts, or acts and practices that deceive

consumers, the public, and/or trade, including without limitation, the use of designations and design elements associated with Chrome Hearts;

d) committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Chrome Hearts; and

e) knowingly assisting, aiding, or attempting to assist or aid any other person or entity in performing any of the prohibited activities referred to in subparagraphs (a) through (d) above.

2.    Entry of an ORDER directing Defendants to recall from any distributors and retailers and to deliver to Chrome Hearts for destruction, or other disposition, all remaining inventory of the Accused Products, in addition to any other goods that infringe upon Chrome Hearts' rights to the Chrome Hearts Marks, including all advertisements, promotional and marketing materials therefore, as well as means of making same in their possession or under their control;

3.    Entry of an ORDER directing Defendants to disclose their supplier(s) and manufacturer(s) of the Accused Products and provide all documents, correspondence, receipts, and invoices associated with the purchase of the Accused Products;

4.    Entry of an ORDER pursuant to 15 U.S.C. § 1116(a), directing Defendants to file with this Court and serve on Chrome Hearts within thirty (30) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

5.    Entry of an ORDER for an accounting by Defendants of all gains, profits, and/or advantages derived from their infringing acts;

6.    Entry of an ORDER finding that, by the acts complained of above,

COMPLAINT
DEMAND FOR JURY TRIAL

Defendants have infringed Chrome Hearts' federally registered trademarks in violation of 15 U.S.C. § 1114;

7.    Entry of an ORDER finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a);

8.    Entry of an ORDER finding that, by the acts complained of above, Defendants have engaged unfair competition in violation of Cal. Bus. & Prof. Code § 17200;

9.    Entry of an ORDER finding that, by the acts complained of above, Defendants have engaged in common law trademark infringement;

10.    Entry of an ORDER finding that, by the acts complained of above, Defendants have engaged in common law unfair competition;

11.    An award of Defendants' profits and all damages sustained by Chrome Hearts as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a), or in the alternative should Chrome Hearts so elect, an award of statutory damages for counterfeit marks under 15 U.S.C. § 1117(c) to Chrome Hearts;

12.    An award of all costs, disbursements, and other expenses incurred by Chrome Hearts due to Defendants' unlawful conduct pursuant to 15 U.S.C. § 1117(a);

13.    An award of treble damages in the amount of Defendants' profits or Chrome Hearts' damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

14.    An award of applicable interest amounts, costs, disbursements, and/or attorneys' fees, as an exceptional case under 15 U.S.C. § 1117(b) or otherwise;

15.    An award of fees and punitive damages to the full extent available in connection with Chrome Hearts' claims under California law; and

16.    Any such other relief that the Court deems just and proper.

1

2    Dated: September 11, 2025                    LATHAM & WATKINS LLP

3
                                                 By: */s/ Perry J. Viscounty*
4                                                Perry J. Viscounty

5                                                Carl Joesph Bacon

6                                                Ryan R. Owen
                                                 ***Attorneys for Plaintiff***
7                                                ***Chrome Hearts LLC***

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    COMPLAINT
                                                 DEMAND FOR JURY TRIAL

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

3   Chrome Hearts LLC hereby demands a trial by jury as to all claims in this litigation.

4

5

6   Dated: September 11, 2025                    LATHAM & WATKINS LLP

7                                               By: */s/ Perry J. Viscounty*

8                                               Perry J. Viscounty

9                                               Carl Joseph Bacon
                                                Ryan R. Owen

10                                              ***Attorneys for Plaintiff***

11                                              ***Chrome Hearts LLC***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
DEMAND FOR JURY TRIAL